IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| CALLIXTUS ONIGBO NWAEHIRI, | * |
| Petitioner, | * |
| v. | * CIVIL NO.:   WDQ-13-0903 |
|  | * CRIMINAL NO.: WDQ-06-0444 |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Callixtus Onigbo Nwaehiri was convicted by a jury of drug distribution and other crimes. ECF Nos. 480, 500. On December 12, 2008, he was sentenced to 60 months imprisonment. ECF Nos. 488, 500. Pending are Nwaehiri's *pro se* motions: (1) to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, ECF No. 660; and (2) for reconsideration of the Court's previous order denying his request for discovery, ECF No. 669. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, Nwaehiri's motions will be denied.

I. Background

Nwaehiri was a licensed pharmacist in Maryland and a part owner and operator of NewCare Home Health Services, Inc., also known as NewCare Pharmacy ("NewCare"). ECF No. 666 at 3. In 2005, NewCare contracted with a Florida-based distribution

business (the "Florida headquarters"), which consisted of several corporations, to fill prescriptions over the Internet. *See* ECF Nos. 660-1 at 5, 666 at 4-5.  Patients from all 50 states contacted the Florida headquarters online, Florida-based doctors employed by the Florida headquarters issued prescriptions to those patients without a face-to-face meeting, and NewCare filled the prescriptions.  *See* ECF Nos. 666 at 3, 5; 670 at 18.  The vast majority of the thousands of prescriptions filled by NewCare were for hydrocodone--a highly addictive prescription painkiller--which is classified as a Schedule III controlled substance under the Controlled Substances Act ("CSA").[1]  *See* ECF No. 666 at 4, 8-9.

On October 4, 2006, Nwaehiri was indicted on one count of conspiracy to distribute and possession with intent to distribute a controlled substance "outside the scope of professional practice and not for a legitimate medical purpose." ECF Nos. 15, 666 at 1.  On September 19, 2007, the government filed a superseding indictment, which charged Nwaehiri with additional crimes.  *See* ECF Nos. 177, 666 at 1.  On December 2, 2008, after an eight-week trial before then Chief Judge Benson E. Legg,[2] a jury convicted Nwaehiri of conspiracy to distribute

---

[1] 21 U.S.C. § 801 *et seq.*

[2] Nwaehiri was represented by Kevin J. McCants, Esquire, at trial, ECF No. 76, and Gerald Ruter, Esquire, on appeal, ECF No.

and possess with intent to distribute hydrocodone, in violation
of 21 U.S.C. § 846; six counts of distribution of hydrocodone
and aiding and abetting, in violation of 18 U.S.C. § 2, 21
U.S.C. § 841(a); conspiracy to launder money and money
laundering, in violation of 18 U.S.C. §§ 1956(h), 1957(a); and
filing a false tax return, in violation of 26 U.S.C. § 7206(1).
ECF Nos. 480, 500.

At trial, the government produced evidence that various
warning signs alerted, or should have alerted, Nwaehiri and his
co-conspirators that many of NewCare's customers were abusing
hydrocodone, and that the prescriptions issued by the Florida
headquarters were not for legitimate medical needs. *See* ECF No.
666 at 11, 13. For example, staff members testified that they
received calls from angry and agitated customers complaining
about slightly incorrect pill counts and from others complaining
that their relatives--customers of NewCare--were addicted to
hydrocodone. *See id.* at 11. Fed-Ex called to complain about
deliveries in neighborhoods with heavy drug use. *See id.*
Further, NewCare received hundreds of after-hours calls from
hysterical customers who had not received their drugs or had
received incorrect pill counts. *See id.* at 11-12. Nwaehiri was

---

648. Nwaehiri was tried with co-defendant Stephen Abiodun
Sodipo, another part-owner and operator of NewCare, who was also
convicted of drug distribution and conspiracy charges. *See* ECF
No. 666 at 2.

aware of these calls. *See id.* Also, staff members expressed concerns to Nwaehiri and the other owners of NewCare about the validity of the prescriptions they were filling, because the majority of the prescriptions were for hydrocodone and most of the patients did not live near their prescribing doctors. *See id.* at 14-15. Finally, Nwaehiri made many misrepresentations about the nature of NewCare's business to, *inter alia*, state regulators, NewCare's suppliers, and NewCare's staff. *See id.* at 13-15.

On December 19, 2008, Nwaehiri appealed his conviction and sentence. ECF No. 491. His counsel argued that the district court erred in denying the defendants' motion for a mistrial on grounds that a government witness testified about evidence the district court had ruled inadmissible, and the prosecutor had made improper statements during closing arguments. *United States v. Sodipo*, 467 F. App'x 161, 162-63 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 281, 184 L. Ed. 2d 165 (U.S. 2012) and *cert. denied,* 133 S. Ct. 457, 184 L. Ed. 2d 280 (U.S. 2012). His counsel also argued that the district court erred in denying the defendants' motion for a new trial, "because the court failed to ensure that the jury began deliberations anew when the court replaced a juror with an alternate after deliberations were in progress." *Id.* at 163. The Fourth Circuit affirmed Nwaehiri's conviction and also denied his motion to file a *pro se*

supplemental brief because he was represented by counsel on appeal. *Id.* In a footnote, the Fourth Circuit stated that, even if it had granted Nwaehiri's motion, its "review of the proposed brief persuades us that Nwaehiri fails to articulate claims that would warrant relief." *Id.* at 163 n.2.

On March 22, 2013, Nwaehiri moved to vacate, set aside, or correct his sentence under § 2255.[3] ECF No. 660. The same day, Nwaehiri moved for discovery, asserting that he had "made numerous allegations for which part of the transcripts will be required in support." ECF No. 661. On March 26, 2013, this case was reassigned to Judge William D. Quarles, Jr. On April 5, 2013, the Court denied Nwaehiri's motion for discovery. ECF No. 665.

On May 1, 2013, the government opposed Nwaehiri's § 2255 motion. ECF No. 666. On July 1, 2013, Nwaehiri moved for reconsideration of the Court's order denying his motion for discovery. ECF No. 669. On July 2, 2013, Nwaehiri replied to the government's opposition to his § 2255 motion. ECF No. 670.

II. Analysis

Nwaehiri contends that he is entitled to relief under § 2255 because: (1) he received ineffective assistance of trial

---

[3] Although Nwaehiri was released from prison on June 21, 2013, he is still serving a supervised release term. *See, e.g.,* ECF No. 680. Accordingly, he is still "in custody" under § 2255. *United States v. Hill*, 500 F. App'x 258, 259 (4th Cir. 2012).

counsel when: (a) counsel did not investigate Florida Board of Medicine Regulations (the "Florida Regulations") that govern prescribing medication online, object to their absence in the jury instructions, or use them at trial in his defense; (b) counsel did not move for administrative resolution of his case; and (c) counsel developed a conflict of interest; (2) he received ineffective assistance of appellate counsel because his counsel failed to incorporate the Florida Regulations in his appellate brief as Nwaehiri requested; and (3) the prosecution committed a *Brady* violation by failing to inform the Court and the jury of the Florida Regulations.  ECF No. 660-1.

A. Ineffective Assistance of Counsel

1. Legal Standard

The Sixth Amendment guarantees the effective assistance of trial and appellate counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 397, 105 S. Ct. 830, 837, 83 L. Ed. 2d 821 (1985).  To prove ineffective assistance, Nwaehiri must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687; *Evitts*, 469 U.S. at 392 (*Strickland* standard applies to claims of ineffective assistance of appellate counsel).  To show deficient performance, Nwaehiri must establish that counsel made errors so serious that the "representation fell below an objective standard of

6

reasonableness." *Strickland*, 466 U.S. at 688.  To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct . . . ." *Kratsas v. United States*, 102 F. Supp. 2d 320, 322 (D. Md. 2000) *aff'd*, 9 F. App'x 107 (4th Cir. 2001) (*citing id.* at 688-89).

> 2. Applicability of the Florida Regulations

Nwaehiri contends that he could not be liable under the CSA, because the Florida headquarters--with which he allegedly conspired--complied with Florida Regulations governing the dispensing of prescriptions over the Internet.  *See* ECF No. 660-1 at 3-5.  He argues that, under *Gonzales v. Oregon*, 546 U.S. 243, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006), the Court must defer to the Florida standards for prescribing medicine online. *See id.* at 2-3.  Accordingly, he asserts that his counsel's failure to incorporate the Florida Regulations into his defense or his appeal was prejudicial error, because his--and his alleged co-conspirators'--compliance with the regulations exonerated him.  *See id.* at 4.  In response, the government argues that the Florida Regulations were irrelevant to Nwaehiri's case because "drug abuse will never be considered a

7

legitimate medical purpose;" thus, there was no error.  *See* ECF
No. 666 at 26-28.

Under the CSA's interpretive regulations, prescriptions for
controlled substances must "be issued for a legitimate medical
purpose by an individual practitioner acting in the usual course
of his professional practice." *Gonzales*, 546 U.S. at 250
(*quoting* 21 C.F.R. § 1306.04(a) (internal quotations omitted)).
Accordingly, to convict a medical practitioner of a violation of
the CSA, the government must prove: "(1) that the defendant
distributed or dispensed a controlled substance; (2) that the
defendant acted knowingly and intentionally; and (3) that the
defendant's actions *were not for legitimate medical purposes in
the usual course of his professional medical practice* or were
beyond the bounds of medical practice." *United States v.
Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006) (*quoting United
States v. Singh,* 54 F.3d 1182, 1187 (4th Cir. 1995) (internal
quotation marks omitted)) (emphasis added).  "[T]here are no
specific guidelines concerning what is required to support a
conclusion that a physician acted outside the usual course of
professional practice;" instead "a case-by-case analysis of
evidence must be made to determine whether a reasonable
inference of guilt may be drawn from specific facts." *United
States v. Hitzig*, 63 F. App'x 83, 86 (4th Cir. 2003).

In *Gonzales*, the State of Oregon enacted a law that authorized physicians to prescribe a lethal dose of controlled substances to assist a terminally ill patient in committing suicide. 546 U.S. at 249. In response, the Attorney General issued an interpretive rule which stated that assisted suicide is not a "legitimate medical purpose" under § 1306.04(a). *Id.* at 253-54. The Supreme Court held that Congress had not delegated to the Attorney General authority under the CSA to define a "legitimate medical purpose," and, accordingly, his interpretation was not entitled to *Chevron* deference or deference under *Auer v. Robbins,* 519 U.S. 452, 461-63, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). *See id.* at 255-69. The Court noted that the CSA's "structure and operation . . . presume and rely upon a functioning medical profession regulated under the States' police powers." *Id.* at 270. Because the CSA did not prohibit the prescribing of medication for the purpose of assisting suicide, the Attorney General lacked authority to bar the operation of Oregon's law. *See id.* at 274-75.

Here, Nwaehiri argues that the Florida Regulations have a similar operation as the Oregon law in *Gonzales*. *See* ECF No. 670 at 4-7. The Florida Regulations prohibit physicians from "provid[ing] treatment recommendations, including issuing a prescription, via electronic or other means," unless the following conditions are met: (1) "[a] documented patient

evaluation, including history and physical examination to establish the diagnosis for which any legend drug is prescribed;" (2) the physician talks to the patient about treatment options, risks, and benefits; and (3) maintenance of patient medical records. *See* ECF No. 660-3 at 1.  Although these regulations establish a *process* by which physicians may prescribe medication online, unlike the Oregon law, they do not authorize new "legitimate medical purposes" for which controlled substances may be prescribed.  Thus, *Gonzales* is inapposite.

As the Supreme Court noted in *Gonzales*, the "prescription requirement" of the CSA "ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse.  As a corollary, the provision also bars doctors from peddling to patients who crave the drugs for those prohibited uses."  546 U.S. at 274 (*citing U.S. v. Moore*, 423 U.S. 122, 135, 143, 96 S. Ct. 335, 342, 346, 46 L. Ed. 2d 333 (1975)); *see also, e.g.*, *United States v. Boccone*, 12-4949, 2014 WL 643016, at *13 (4th Cir. Feb. 20, 2014) (finding sufficient evidence to convict nurse practitioner of violating the CSA because, *inter alia*, "indicia of diversion, addiction, and abuse[] in the medical record of these patients [showed] that he knew or had reason to know that prescriptions he issued were for an illegitimate purpose or were not within the scope of usual medical practice").

The evidence at trial established that Nwaehiri knew--or
was willfully blind to--that many of NewCare's customers were
purchasing hydrocodone for reasons of addiction or recreational
abuse, rather than legitimate medical need.  *See* ECF No. 666 at
6-7, 11-12, 14-15.  No matter what procedure Nwaehiri--or his
co-conspirators--used to dispense prescriptions, as medical
practitioners they were subject to the CSA's requirement that
they dispense prescriptions only "for a legitimate medical
purpose . . . in the usual course of [their] professional
practice."  *See* § 1306.04(a); *e.g.*, *United States v. Lawson*, 682
F.2d 480, 482 (4th Cir. 1982) ("The question . . . in any case
where a pharmacist is charged with illegal distribution of
controlled substances, is whether he knew that the purported
prescription was not issued for a legitimate medical purpose or
in the usual course of medical practice.").  Accordingly,
because the Florida Regulations are not relevant to the question
of whether Nwaehiri or his co-conspirators filled prescriptions
for a "legitimate medical purpose" under the CSA,[4] Nwaehiri's

---

[4] In his reply, Nwaehiri argues that *United States v. Prejean*,
429 F. Supp. 2d 782, 801 (E.D. La. 2006), supports his
contention that the Florida Regulations were relevant to the
issue of his liability, and accordingly his counsel erred in
failing to use them in his defense.  *See* ECF No. 670 at 3.
*Prejean* holds that state regulations can be relevant to the
question of what constitutes "professional practice" or a
"legitimate medical purpose" under the CSA, in part, because
*Gonzales* "strongly supports the proposition that states
primarily are responsible for defining what 'legitimate medical

trial counsel did not err by failing to investigate the

regulations, introduce them as evidence at trial, or object to

their absence from the jury instructions.[5]

Similarly, Nwaehiri's appellate counsel did not err in

failing to argue on appeal that the Florida Regulations were a

defense to Nwaehiri's liability.  Although Nwaehiri requested

that his counsel make this argument, *see* ECF No. 660-1 at 9-10,

appellate counsel has no constitutional duty to raise every non-

frivolous issue on appeal, *see Jones* v. *Barnes,* 463 U.S. 745,

103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).  Counsel must be

allowed to exercise reasonable professional judgment in

selecting those issues most promising for review because "to

raise every 'colorable' claim suggested by a client would

disserve the very goal of vigorous and effective advocacy."

---

practice' is."  429 F. Supp. 2d at 801-02.  However, *Prejean*
also notes that the CSA sets a "general, uniform standard of
medical practice" with respect to "the medical treatment of
narcotic addiction," because the primary purpose of the CSA is
to "combat[] recreational drug abuse."  *Id.* at 801 (*quoting
Gonzales*, 546 U.S. at 271-72).  Again, because the government's
evidence at trial showed that Nwaehiri knew that his customers
were abusing hydrocodone--which is not a "legitimate medical
purpose" for dispensing prescriptions under the CSA--evidence
that he or his co-conspirators complied with other state medical
regulations is irrelevant to his criminal liability under the
CSA.

[5] *Cf. Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)
("Counsel is not required to engage in the filing of futile
motions.")  (*quoted in Moody v. Polk*, 408 F.3d 141, 151 (4th
Cir. 2005)).

*Jones*, 463 U.S. at 754; *Ivey v. Ozmint*, 304 F. App'x 144, 150 (4th Cir. 2008) (Appellate counsel must be accorded "the presumption that he decided which issues were most likely to afford relief on appeal."). As Nwaehiri's claim was not even colorable,[6] there was no error in failing to make his requested argument.

Accordingly, Nwaehiri has failed to establish ineffective assistance of trial or appellate counsel on grounds that his counsel failed to use the Florida Regulations in his defense or on appeal.

### 3. Administrative Resolution

Nwaehiri also argues that his trial counsel was ineffective, because he "fail[ed] to move for an administrative resolution[] of this case," which would have enabled his counsel to obtain the assistance of the Florida Board of Medicine "in resolving the case with [the Drug Enforcement Agency]." ECF No. 660-1 at 8. The government contends that Nwaehiri lacked "power to dictate how this case was handled," so his counsel could not err in failing to move for administrative resolution. ECF No. 666 at 30.

The government correctly notes that the government--not Nwaehiri--had the power and discretion to decide whether to prosecute Nwaehiri. *See id.*; *Wayte v. United States*, 470 U.S.

---

[6] *See, e.g.*, *Sodipo*, 467 F. App'x at 163 n.2.

598, 607, 105 S. Ct. 1524, 1530, 84 L. Ed. 2d 547 (1985) ("So
long as the prosecutor has probable cause to believe that the
accused committed an offense defined by statute, the decision
whether or not to prosecute, and what charge to file or bring
before a grand jury, generally rests entirely in his
discretion."). Moreover, Nwaehiri has not shown or argued that-
-even if his trial counsel had moved for administrative
resolution of his criminal case--the motion would likely have
been successful.  Accordingly, Nwaehiri cannot establish
ineffective assistance of counsel on this basis. *See*
*Strickland*, 466 U.S. at 694.

### 4. Conflict of Interest

Nwaehiri contends that his trial counsel had a conflict of
interest, because--during the trial--counsel's secretary's son
died of a hydrocodone overdose. ECF No. 660-1 at 9. He argues
that this event resulted in counsel's "dismal performances as
articulated in [his] entire brief." *Id.* The government
contends that "there is nothing in the record that would support
[Nwaehiri's] suggestion that following that event, defense
counsel was impacted to the defendant's detriment." ECF No. 666
at 30.

To establish that a conflict of interest resulted in
ineffective assistance, a petitioner "must show (1) that his
lawyer was under an actual conflict of interest and (2) that

14

this conflict adversely affected his lawyer's performance."
*United States v. Nicholson,* 475 F.3d 241, 249 (4th Cir. 2007)
(*quoting Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980)) (internal
quotation marks omitted). A conflict of interest can exist
between a client and his "attorney's own personal interests."
*Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002). If the
petitioner can show both elements, "prejudice is presumed and
there is no need to demonstrate a reasonable probability that,
but for the lawyer's conflict of interest the trial or
sentencing outcome would have been different." *Nicholson,* 475
F.3d at 249.

Assuming an actual conflict of interest because of the
death of Nwaehiri's trial counsel's secretary's son, an adverse
effect "cannot be presumed from the mere existence of a conflict
of interest." *Rubin*, 292 F.3d at 401 (*citing Mickens v. Taylor,*
122 S. Ct. 1237, 1243-45, 152 L. Ed. 2d 291 (2002)). Nwaehiri
has identified no adverse effects of the conflict beyond those
alleged errors that the Court has already considered and
rejected. *See* ECF No. 660-1 at 9; *supra* Section II.A.2, 3.
Accordingly, Nwaehiri has not established that he received
ineffective assistance of counsel because of a conflict of
interest.

B. *Brady* Violation

Nwaehiri contends that the government violated *Brady* "when it failed to inform the court, the jury and petitioner of the [Florida Regulations]." ECF No. 660-1 at 6-7. He argues that, if these regulations had been disclosed "the outcome would have been different to disprove the claims of violating standards of medical practice." *Id.* at 7. In response, the government asserts that Nwaehiri "misunder[stands] the government's *Brady* obligations," and "[t]here was no *Brady* violation." ECF No. 666 at 29.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." To prove a *Brady* violation, a defendant must show that the evidence was (1) favorable to the defendant, (2) material, and (3) that the prosecution had the evidence and failed to disclose it. *Moore v. Illinois,* 408 U.S. 786, 794-95, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972); *United States v. Stokes,* 261 F.3d 496, 502 (4th Cir. 2001). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,*

16

473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

For the reasons discussed above, the Florida Regulations were

not material, because they were not relevant to the question of

Nwaehiri's liability under the CSA and would not have changed

the result of trial. *See supra* Section II.A.2.  Accordingly,

the prosecution did not commit a *Brady* violation.

C. Motion for Reconsideration

Nwaehiri also moves for reconsideration of the Court's

previous order denying discovery.  ECF No. 669.  He does not

specify under which rule he brings his motion.  *See id*.

A motion to reconsider a judgment may be construed as a

motion to alter or amend a judgment under Federal Rule of Civil

Procedure 59(e), or a motion for relief from a judgment under

Federal Rule of Civil Procedure 60(b).  A motion to alter or

amend filed within 28 days of the judgment is analyzed under

Rule 59(e); if the motion is filed later, Rule 60(b) controls.

*See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines,*

532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley,* 988 F.2d 1, 2-

3 (4th Cir. 1992).  Because Nwaehiri filed his motion more than

28 days after the judgment, it will be considered under Rule

60(b).

For relief under Rule 60(b), Nwaehiri must make a threshold

showing of timeliness, a meritorious claim or defense, and a

lack of unfair prejudice to the opposing party.  *Aikens v.*

17

*Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). "After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)." *Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reasons that justify relief. *Aikens*, 652 F.3d at 500 & n.3. To establish a "meritorious claim or defense," the movant "must make allegations that, if established at trial, would constitute a valid claim or defense." *Holland v. Virginia Lee Co., Inc.*, 188 F.R.D. 241, 249 (W.D. Va. 1999).

The Court previously denied Nwaehiri's motion for discovery, because he failed to "make specific allegations establishing reason to believe that, if the facts are fully developed, he is entitled to relief." ECF No. 665 at 2. In his motion to reconsider, Nwaehiri contends that he needs discovery to support the "disputed claims" in his § 2255 motion, which he describes again in detail. *See* ECF No. 669 at 2, 5. For the reasons discussed above, Nwaehiri's claims of error do not state valid claims or defenses which would entitle him to relief under § 2255. *See supra* Section II.A, B. Accordingly, because Nwaehiri has failed to show "a meritorious claim or defense," he

18

is not entitled to reconsideration under Rule 60(b). *See Aikens*, 652 F.3d at 501.

### D. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Nwaehiri has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

### III. Conclusion

For the reasons stated above, Nwaehiri's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, and

his motion for reconsideration, will be denied.

_5/5/14_
Date

_____
William D. Quarles, Jr.
United States District Judge